**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALPINE PET OPCO LLC, | ) | |
| Plaintiff, | ) | C.A. No: |
| v. | ) | JURY TRIAL DEMANDED |
| ELEVAYZ LLC D/B/A GRANDIOSEGOODS, | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Alpine Pet OpCo LLC d/b/a Antelope Pets ("Plaintiff") by and through counsel, and for its Complaint against ELEVAYZ LLC d/b/a GrandioseGoods ("Defendant"), states as follows:

## INTRODUCTION

1. Defendant is engaged in the unauthorized sale of materially different products under Plaintiff's brand name and using Plaintiff's trademarks.

2. As a result of Defendant's unauthorized sales, Defendant is harming consumers, deceiving and misleading the consuming public, and violating Plaintiff's rights in its proprietary intellectual property.

3. These unauthorized sales and infringing activities are illegal and have harmed, and will continue to harm, Plaintiff.

## PARTIES

4. Plaintiff is a manufacturer and retailer of premium pet care products, including treats, dental chews, hip and joint supplements, and digestion aids (collectively, the "Products").

5. Defendant sells the Products, without Plaintiff's authorization or consent, as a third-party seller on Amazon.com, Inc.'s ("Amazon") United States e-commerce platform (the "Amazon

Marketplace") at the unique Amazon Marketplace storefront "GrandioseGoods" (the "Storefront"), and on potentially other sites or through other channels.

**JURISDICTION/VENUE**

6. This Court has subject matter jurisdiction over Plaintiff's claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, pursuant to 28 U.S.C. §§ 1331 and 1338(a), and has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related to Plaintiff's federal claims that it forms part of the same case or controversy.

7. This Court has personal jurisdiction because Defendant is a limited liability company organized and existing under the laws of the State of Delaware (Delaware Secretary of State File No. 7576496), and is therefore at home in, and subject to general personal jurisdiction in, this judicial district. Defendant may be served with process via its registered agent for service: A Registered Agent, Inc., 8 The Green, Ste A, Dover, Delaware 19901.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant, a Delaware limited liability company, resides in this judicial district for venue purposes, as it is subject to personal jurisdiction here with respect to this action.

**BACKGROUND**

***Plaintiff's Business***

9. Plaintiff sells the Products bearing various trademarks validly registered with the United States Patent and Trademark Office, including SUPER SNOUTS (Reg. No. 5690853), and DIGGIN' YOUR DOG (Reg. No. 5702027) (collectively, the "Trademarks").

10. Plaintiff has spent considerable resources to develop, market and protect its Trademarks, which have become a symbol of quality in the industry.

11. The Trademarks are famous.

12. Plaintiff sells the Products on its United States website, through select online retailers, on the Amazon Marketplace, and in traditional brick-and-mortar establishments.

13. Plaintiff also sells the Products to certain resellers (each, an "Authorized Reseller") to the extent they abide by Plaintiff's Authorized Resellers Policy (the "Resale Policy"). The Resale Policy is set forth in Exhibit A, attached hereto this Complaint.

***The Resale Policy***

14. Plaintiff uses the Resale Policy to: (i) protect its customers by ensuring the quality of its Products, their presentation, and the associated services meet certain standards; (ii) protect its Authorized Resellers by promoting fair competition between Authorized Resellers; and (iii) protect its brand, its goodwill, and its valuable intellectual property, including its proprietary images, designs, content, and the Trademarks.

15. The Resale Policy requires Authorized Resellers to abide by certain quality controls related to the origins, packaging, storing, and shipping of the Products they sell.

16. Authorized Resellers must store Products in a cool, dry place, away from direct sunlight, extreme heat, and dampness, and in accordance with any additional storage guidelines specified by Plaintiff from time to time.

17. Authorized Resellers must only sell Products in their original packaging with all seals intact; relabeling, repackaging (including the separation of bundled Products or the bundling of Products), misbranding, adulterating and other alterations to Products or their packaging are not permitted.

18. Authorized Resellers must not remove, translate, or modify the contents of any label or literature on or accompanying the Products and may not tamper with, deface, or otherwise alter any batch code or other identifying information on Products or their packaging.

19. Upon receipt of the Products, Authorized Resellers must inspect the Products and their packaging for damage, defect, broken seals, evidence of tampering, or other nonconformance (a "Defect").

20. If any Defect is identified, Authorized Resellers may not offer the Product for sale and must promptly report the Defect to Plaintiff's customer service team.

21. Authorized Resellers must manage their inventory of Products on a FIFO (first-in-first-out) basis.

22. Authorized Resellers must inspect inventory regularly for expired or soon-to-be expired Products and not sell any Products that are expired or soon-to-be expired, and Authorized Resellers must destroy such Products.

23. Authorized Resellers must be familiar with the special features of all Products marketed for sale and obtain sufficient Product knowledge to advise customers on the selection and proper use of the Products, as well as any applicable guarantee, or return policy.

24. Authorized Resellers must ensure that any third-party logistics provider engaged to store inventory of or fulfill orders for the Products is aware of and complies with all Product quality controls and customer service standards set forth in the Resale Policy, and ensure that any such third-party logistics provider stores all inventory of Products segregated by seller such that no Products provided to the third-party logistics provider are commingled with those owned by any third party.

25. Authorized Resellers must be available to respond to customer questions and concerns both before and after sale of the Products and respond to customer inquiries promptly.

26. Authorized Reseller must cooperate with Plaintiff with respect to any tracking systems that Plaintiff may implement from time to time.

27. Authorized Resellers must cooperate with Plaintiff to assist with any Product recall or other consumer safety information dissemination efforts.

28. Authorized Resellers must represent the Products in a professional manner and refrain from any conduct that is or could be detrimental to the reputation of Plaintiff.

29. Authorized Resellers must implement commercially reasonable loss prevention and anti-diversion measures and notify Plaintiff of any theft or loss of Products.

30. Authorized Resellers must report to Plaintiff any customer complaints with respect to the Product.

31. Authorized Resellers must cooperate with Plaintiff in the investigation and resolution of any quality or customer service issues related to the sale of the Products.

32. Authorized Resellers are prohibited from selling Products on third-party marketplaces such as the Amazon Marketplace. Paragraphs 15-32 are referred to herein as the "Quality Controls".

33. Authorized Resellers in compliance with the Resale Policy may offer Plaintiff's 60-Day Satisfaction Guarantee (the "Satisfaction Guarantee").

34. The Satisfaction Guarantee provides that if a Product purchased from Plaintiff or one of its Authorized Resellers has any Defects, Plaintiff will replace or refund the Product.

35. The Satisfaction Guarantee is void on Products sold by resellers that do not comply with the Resale Policy or are otherwise unauthorized to sell.

36. Specifically, the Satisfaction Guarantee states: "Please note that because we are unable to control the quality of our products sold by unauthorized sellers, unless otherwise prohibited by law, the Satisfaction Guarantee is not available for products purchased from

unauthorized sellers, including unauthorized internet sites." The Satisfaction Guarantee is set forth on Exhibit B, attached hereto this Complaint.

37. Resellers, such as Defendant, which sell on the Amazon Marketplace cannot offer the Satisfaction Guarantee.

38. Defendant is an unauthorized reseller, and Defendant does not comply with the Resale Policy.

39. Accordingly, Defendant is selling products without the Satisfaction Guarantee.

***Brand Protections***

40. In addition to protecting customers, the Resale Policy is designed to encourage fair competition between Authorized Resellers and ensure that becoming an Authorized Reseller is a worthwhile venture.

41. By requiring resellers to abide by certain Quality Controls, prohibiting sales practices that sacrifice Product quality, and directing resellers to purchase from approved sources, the Resale Policy ensures a level playing field for Plaintiff's distributors and retailers.

42. Healthy, legitimate competition is good for Plaintiff's customers and Plaintiff's Authorized Resellers.

43. Plaintiff has invested significant time, effort, and resources to ensure that the consuming public has a positive perception of Plaintiff and the Products.

44. Plaintiff's reputation and goodwill is a valuable resource and one which Plaintiff is careful to protect.

45. Resellers who provide materially altered and inferior Products harm Plaintiff's reputation and goodwill because the failings of such Products are associated with Plaintiff, not with the resellers.

46. Plaintiff has implemented these measures to preserve brand integrity, maintain the high quality of the Products, and ensure customers are receiving genuine, defect-free products.

47. When sellers fail to abide by these requirements, it poses risks to customers and damages the goodwill and reputation of Plaintiff.

***The Growth of E-Commerce***

48. The explosion of e-commerce websites, particularly Amazon, has created problems for manufacturers in terms of ensuring that products being sold are genuine, defect-free products.

49. In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online.

50. Many times these products may be materially different in that they are damaged, expired, sold without warranty, or of an inferior quality. However, given the nature of e-commerce sales, consumers unknowingly purchase these products believing them to be genuine.

51. Indeed, on Amazon, all sales of a particular product are sold under a single Amazon Standard Identification Number (ASIN), so consumers face an even more significant challenge trying to determine whether a product is coming from an authorized reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

52. This is precisely the problem that e-commerce websites create; anonymous third parties sell products that may be inferior or defective, and consumers are ultimately harmed when they receive non-genuine products.

53. Consumers then associate that harm with the manufacturer, not the anonymous reseller.

***Defendant Begins Selling the Products Without Authorization***

54. At least since May 2025, Defendant has been selling materially altered Products

bearing the Trademarks without authorization, without Plaintiff's consent, and in violation of the Resale Policy.

55. Defendant sells the Products online on Amazon, through the Storefront and possibly other websites.

56. Because Defendant is an unauthorized reseller of the Products, Plaintiff cannot verify that Defendant abides by Plaintiff's Quality Controls or its customer service requirements.

57. Upon information and belief, Defendant does not abide by Plaintiff's Quality Controls nor does Defendant offer the same level of customer service as Authorized Resellers.

58. Improperly handled Products could be damaged, be subjected to adverse conditions, or experience other unexpected issues.

59. Per the terms of the Resale Policy, Defendant is prohibited from selling on Amazon.

60. Because Plaintiff cannot verify that Defendant abides by Plaintiff's Quality Controls or its customer service requirements and Defendant is in breach of the Resale Policy by selling on Amazon, Defendant cannot offer the Satisfaction Guarantee.

61. Products sold by Defendant do not come with the Satisfaction Guarantee.

62. Amazon's Marketplace Items Condition Guidelines[1] require that any product that is listed as "New" come with the "Original manufacturer's warranty, if any."

63. Defendant lists the Products for sale as "New" despite the fact that Products sold by Defendant do not come with the Satisfaction Guarantee.

64. These issues mean that customers are not getting what they expect or what they pay for. They are receiving materially altered products and the differences have a materially

[1] The Guidelines are available at: https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720 (last visited Aug. 11, 2026).

detrimental impact on the customer's experience with the Products and, accordingly, with Plaintiff's brand.

65. As a result, the Products sold by Defendant are non-genuine Products, and such Products are inferior to Products sold by Resellers, as they do not come with the same suite of services as Products sold by Authorized Resellers.

66. By selling non-genuine and inferior Products, Defendant is harming consumers and is infringing on Plaintiff's rights in and to the Trademarks.

67. The sale of non-genuine and inferior Products has tarnished and diluted the goodwill and distinctive quality of the Trademarks.

***Plaintiff Demands Defendant Cease Selling the Products***

68. On several occasions, undersigned counsel, on behalf of Plaintiff, contacted Defendant and requested that Defendant cease its infringing sales of the Products.

69. On June 18, 2026, undersigned counsel sent Defendant a letter requesting that Defendant cease its infringing sales of the Products (the "First Letter").

70. However, Defendant did not discontinue its sales.

71. On June 25, 2026, undersigned counsel sent a second letter (the "Second Letter"), again informing Defendant that Defendant's sales were unauthorized and in violation of Plaintiff's intellectual property rights.

72. The Second Letter also informed Defendant that its continued sale of Products now amounted to willful trademark infringement and Plaintiff again demanded that Defendant immediately cease selling the Products.

73. Defendant continued to sell the Products.

74. Plaintiff then sent Defendant its final demand to stop selling the Products (the "Final Letter").

75. As of the date hereof, Defendant continues to sell the Products. The First Letter, the Second Letter, and the Final Letter are attached hereto as Exhibit C.

## CLAIM ONE
## Declaratory Judgment/Injunctive Relief

76. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

77. An actual and justiciable controversy exists between Plaintiff and Defendant related to whether Defendant has the right to sell the Products without Plaintiff's consent and in violation of Plaintiff's rights in the Trademarks.

78. The Court, pursuant to 28 U.S.C. § and Fed. R. Civ. P. 57, should declare that Defendant has no right or authorization to sell the Products, or use the Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

79. The Court should further declare that the Demand Letters gave Defendant actual notice that it was not authorized to use the Trademarks, and any continued use of the Trademarks or unauthorized sales of the Products constitutes willful violations of Plaintiff's rights in the Trademarks.

80. Such a declaration is proper, pursuant to 28 U.S.C. § 2201, because the declaration would terminate the actual and justiciable controversy between Plaintiff and Defendant and remove any uncertainty with respect to this issue.

81. Additionally, the Court should enjoin Defendant from any further sales of the Products and use of the Trademarks.

**CLAIM TWO**
**Unfair Competition (Delaware Common Law)**

82. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

83. Plaintiff owns valid and protected rights in the Trademarks, which Plaintiff uses to identify itself as the source of the Products and which carry substantial goodwill and consumer recognition in the marketplace.

84. Defendant and Plaintiff compete for sales of the Products to the same consuming public through the same e-commerce channels.

85. Defendant's unauthorized sale of the Products bearing the Trademarks falsely suggests that Plaintiff sponsors, approves, or stands behind Products that do not, in fact, meet Plaintiff's standards.

86. Defendant's actions have damaged Plaintiff in the form of, *inter alia*, lost sales, interference with current and prospective business relationships, trademark infringement, trademark dilution, and tarnishment of Plaintiff's brand, goodwill, and reputation.

87. Defendant's actions, including, but not limited to, its unauthorized sale of the Products and its unauthorized use of the Trademarks, constitute unfair competition under 6 *Del. C.* § 2532.

88. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**CLAIM THREE**
**Trademark Infringement (15 U.S.C. § 1114)**

89. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

90. Plaintiff is the owner of the Trademarks.

91. The Trademarks are valid and subsisting marks in full force and effect and registered with the United States Patent and Trademark Office.

92. Defendant uses the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

93. The Products sold by Defendant bearing the Trademarks do not come with the Satisfaction Guarantee, and upon information and belief, Defendant does not abide by the Quality Controls set forth in the Resale Policy.

94. Because the Products sold by Defendant do not have the Satisfaction Guarantee and are not handled with the requisite Quality Controls these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

95. Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on, and damages the value of, the Trademarks.

96. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendant come with the Satisfaction Guarantee and the same Quality Controls as Products sold by Plaintiff or Authorized Resellers, when, in fact, they do not.

97. Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

98. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

99. Plaintiff informed Defendant that its sales of the Products infringed on Plaintiff's rights in the Trademarks.

100. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

101. Plaintiff is entitled to recover damages from Defendant's infringement and disgorgement of any profits from Defendant's infringing sales of the Products.

102. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademarks is willful.

**CLAIM FOUR**
**Unfair Competition (15 U.S.C. § 1125(a))**

103. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

104. Plaintiff is the owner of the Trademarks.

105. The Trademarks are valid and subsisting marks, in full force and effect, and registered with the United States Patent and Trademark Office.

106. Defendant uses the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

107. The Products sold by Defendant bearing the Trademarks do not come with the Satisfaction Guarantee, and upon information and belief, Defendant does not abide by Quality Controls in the Resale Policy.

108. Because the Products sold by Defendant do not have the Satisfaction Guarantee and are not sold in accordance with the Quality Controls in the Resale Policy, these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

109. Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

110. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

111. Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

112. Plaintiff informed Defendant that its sales of the Products infringed on Plaintiff's rights in the Trademarks.

113. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

114. Plaintiff is entitled to recover damages from Defendant's infringement of the Trademarks and disgorgement of any profits from Defendant's infringing sales of the Products.

115. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademarks is willful.

## CLAIM FIVE
**Trademark Dilution (15 U.S.C. § 1125(c))**

116. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

117. Plaintiff is the owner of the Trademarks.

118. The Trademarks are valid and subsisting marks, in full force and effect, and registered with the United States Patent and Trademark Office.

119. Plaintiff has continuously used the Trademarks in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks.

120. The Trademarks are famous.

121. Plaintiff sells the Products bearing the Trademarks throughout the United States.

122. Customers have come to associate the Trademarks with Plaintiff and the Products.

123. Customers associate the Trademarks with high-quality products.

124. Defendant is using the Trademarks in connection with the sale of the Products.

125. Defendant has sold the Product across the United States.

126. However, the Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's products do not come with the Satisfaction Guarantee and upon information and belief, are not sold in accordance with the Quality Controls in the Resale Policy.

127. Because Defendant is selling an inferior product, Defendant's use of the Trademarks is causing the dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks in violation of 15 U.S.C. § 1125(c).

128. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademark, Plaintiff has suffered and continues to suffer immediate and irreparable

harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

129. Plaintiff is entitled to recover damages from Defendant's infringement of the Trademarks and disgorgement of any profits from Defendant's infringing sales of the Products.

130. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C. § 1117(a) because Defendant's infringement of the Trademarks is willful.

**CLAIM SIX**
**False Advertising (15 U.S.C. § 1125(a)(1)(B))**

131. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

132. Plaintiff is the owner of the Trademarks.

133. Plaintiff has registered the Trademarks with the United States Patent and Trademark Office.

134. The Trademarks are valid and subsisting trademarks in full force and effect.

135. Through the Storefront, Defendant has willfully and knowingly used, and continued to use, the Trademarks in interstate commerce for purposes of advertising, promoting, and selling the Products without Plaintiff's consent.

136. Defendant's advertisements and promotions of the Products using the Trademarks have been disseminated throughout commerce to consumers across the country.

137. Defendant has used, and continues to use, the Trademarks to falsely advertise that the Products Defendant sells come with the Satisfaction Guarantee.

138. Such advertisement is false because the Satisfaction Guarantee does not come with the Products sold by Defendant.

139. Products purchased from Plaintiff and its Authorized Resellers come with the Satisfaction Guarantee.

140. Plaintiff cannot ensure the source, legitimacy, or quality of products sold by unauthorized resellers such as Defendant.

141. Therefore, products sold by unauthorized resellers like Defendant do not come with the Satisfaction Guarantee.

142. Products listed on Amazon as "New" must come with any warranty offered by the manufacturer.

143. Defendant lists the Products as "New" on the Storefront.

144. Such representation is false because the Products sold by Defendant do not come with the Satisfaction Guarantee.

145. Defendant's use of the Trademarks in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's Products because it suggests that the Products come with the Satisfaction Guarantee when, in fact, they do not.

146. Defendant's use of the Trademarks in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademarks is likely to cause confusion, cause mistake, or deceive because it falsely suggests that the Products Defendant offers for sale are genuine and authentic Products that come with the Satisfaction Guarantee, when in fact they do not.

147. Defendant's unauthorized and deceptive use of the Trademarks is material and likely to influence customers to purchase the Products they sell, as consumers are likely to believe

that Products Defendant advertises using the Trademarks are genuine Products that come with the Satisfaction Guarantee when, in fact, they do not.

148. Defendant's unauthorized use of the Trademarks in advertising and sale of the Products without Plaintiff's consent infringes on the Trademarks.

149. As a proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

150. Plaintiff is entitled to recover its damages caused by Defendant's infringement of the Trademarks and disgorge Defendant's profits from their willfully infringing sales and unjust enrichment.

151. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiff will continue to suffer.

152. Plaintiff is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Trademarks.

## CLAIM SEVEN
## Delaware Deceptive Trade Practices Act (6 *Del. C.* § 2532)

153. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

154. Defendant is a "person" engaged in a "business, vocation, or occupation" within the meaning of 6 Del. C. § 2532(a).

155. By selling the Products without authorization while representing them as "New" and equivalent to genuine Products sold by Plaintiff and its Authorized Resellers, Defendant: (i) passes off the Products as those of Plaintiff sold in accordance with the Resale Policy, in violation

of 6 *Del. C.* § 2532(a)(1); (ii) causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Products, in violation of 6 *Del. C.* § 2532(a)(2); and (iii) represents that the Products have characteristics, uses, benefits, and quantities, including the Satisfaction Guarantee, that they do not have, in violation of 6 *Del. C.* § 2532(a)(5).

156. Plaintiff need not prove competition between the parties or actual confusion or misunderstanding in order to prevail on this claim, pursuant to 6 *Del. C.* § 2532(b).

157. Plaintiff has been damaged by Defendant's deceptive trade practices, including through harm to Plaintiff's reputation and goodwill, and is therefore entitled to injunctive relief pursuant to 6 *Del. C.* § 2533(a) enjoining Defendant from further sales of the Products and use of the Trademarks.

158. Because Defendant's violations are willful, Plaintiff is entitled to recover its reasonable attorneys' fees pursuant to 6 *Del. C.* § 2533(b).

## JURY DEMAND

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. As to Count One, a declaratory judgment stating that Defendant is unauthorized to sell the Products and permanently enjoin Defendant from any further sales of the Products;

B. As to Count Two, award compensatory damages in an amount to be determined at trial and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

C. As to Count Three, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

D. As to Count Four, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of its profits from all unauthorized

sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

E. As to Count Five, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

F. As to Count Six, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendant of its profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products; and

G. As to Count Seven, permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products, award Plaintiff its reasonable attorneys' fees and costs pursuant to 6 Del. C. § 2533(b), and, to the extent permitted by 6 Del. C. § 2533(c), treble compensatory damages awarded to Plaintiff under Count Two.

***

Dated: August 13, 2026

ALEX E. JONES (0095807)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114
Phone: 216-696-8700
Fax: 216-621-6536
Email: aej@kjk.com

BAYARD, P.A.

*/s/ Ronald. P. Golden III*
Thad J. Bracegirdle (#3691)
Ronald P. Golden III (#6254)
600 North King Street, Suite 400
Wilmington DE 19801
Telephone: 302.429.4262
tbracegirdle@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff Alpine Pet OpCo LLC*